UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

BPI SPORTS, LLC, a Florida limited
liability company,

       Plaintiff,

v.

YUP BRANDS, LLC, a Nevada limited
liability company,

       Defendant.
_____/

## COMPLAINT

Plaintiff BPI Sports, LLC, a Florida limited liability company ("BPI"), sues Defendant YUP Brands, LLC, a Nevada limited liability company ("YUP"), and alleges:

### NATURE OF THE ACTION

1. BPI brings this action pursuant to 15 U.S.C. § 1125(a) and the Florida Deceptive and Unfair Trade Practices Act to obtain redress for, and to put a stop to, YUP's false and deceptive labeling of its protein bar products as being "healthy" and made with "natural" ingredients.

2. At issue in this case is the entire line of YUP's protein bars and energy bars: the B-Up Chocolate Chip Cookie Dough Bar, the B-Up Peanut Butter Bar, the B-Up PB&J Bar, the B-Up Vanilla Peanut Butter Bar, the B-Up Sugar Cookie Bar, the B-Up Chocolate Mint Bar, the B-Up Cinnamon Roll Bar, the B-Jammin PB&J Bar, the B-Jammin Vanilla Cherry Pie Bar, and the B-Jammin Apple Pie ala Mode Bar (collectively, the "YUP Bars").

3. YUP brands, markets and advertises the YUP Bars as, *inter alia*, "healthy," "the healthy and delicious choice your taste-buds and body deserves," "a healthier snack," containing "the highest quality nutrients … to deliver advanced nutrition," and containing the "natural" and "100% natural"

ingredient xylitol. YUP makes these and other claims touting the healthiness and naturalness of the YUP Bars on the labels of the YUP Bars, the packaging of the boxes containing the YUP Bars, and on the website that the YUP Bars' labeling and packaging refers consumers to visit for additional nutrition information.

4. Despite YUP's claims that the YUP Bars are "healthy" and contain "healthy" nutrients and ingredients, the YUP Bars do not meet the U.S. Food and Drug Administration ("FDA") statutory requirements for making such claims. Section 403 of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 34, and its implementing regulations found in Title 21, Code of Federal Regulations, Part 101 (21 C.F.R. § 101), enumerate various ways that "[a] food shall be deemed to be misbranded." 21 U.S.C. § 343.

5. As discussed in detail below, eight of the ten varieties of YUP Bars contain elevated levels of saturated fat that indicate that they are not truly "healthy" within the meaning of the FDCA and its enumerated provisions. Accordingly, the YUP Bars are "misbranded" under the FDCA and are being falsely and deceptively marketed to consumers.

6. Furthermore, all ten varieties of the YUP Bars are falsely and deceptively marketed to consumers as containing a "natural" and "100% natural" ingredient called "xylitol," which in fact is a synthetic ingredient derived from a chemical process (and thus not naturally occurring).

7. YUP's false and deceptive labeling, packaging and marketing of the YUP Bars has caused and continues to cause consumers to purchase the offending YUP Bars based upon the mistaken belief that these products are "healthier" than other competing products and/or contain a "natural" ingredient not contained in other competing products. Accordingly, as a direct and proximate result of YUP's false and deceptive advertising, YUP has siphoned and threatens in the future to siphon customers away from BPI, causing BPI to lose sales and market share.

## PARTIES

8. BPI is a Florida limited liability company organized and existing under the laws of the State of Florida, with its principal place of business located in Hollywood, Florida. BPI's members are Florida citizens.

9. BPI is engaged in the business of manufacturing, selling and marketing various dietary and nutritional supplements and sports nutrition products, including protein bars under the "FunnBar" brand name. BPI has expended substantial resources to develop, promote, brand, market, sell, and maintain the quality of its products, including the FunnBar. BPI sells the FunnBar throughout the United States and internationally.

10. YUP is a Nevada limited liability company organized and existing under the laws of the State of Nevada, with its principle place of business located in Las Vegas, Nevada. Upon information and belief, YUP's members are Nevada and California citizens.

11. Like BPI, YUP is also engaged in the business of manufacturing, advertising and selling protein bar products throughout the United States and internationally. YUP sells its products under the "B-Up Bar" and "B-Jammin Bar" brand names. Both brands of YUP Bars are specifically targeted to health conscious consumers.

12. Indeed, the labeling and packaging of all of the YUP Bars and the YUP website prominently state:

> Life is not about what you are. It's about what you can be. And with the right fuel, B-UP believe you can unlock your unlimited potential. That's why we go where no bar has gone before, blending <u>the highest quality nutrients</u> with select mouth-watering ingredients to deliver advanced nutrition that simply tastes better. It's time to be active. <u>It's time to be healthy</u>. It's time to be better. But above all, it's time to B-UP.[1]

(emphasis added).

13. As YUP's website further explains, manufacturing and selling purportedly "healthy"

---

[1] *B-UP Bar*, YUP Brands, https://yupbrands.com/b-up-protein-bar/ (last accessed Jan. 10, 2016).

products, containing only the so-called "cleanest" and "natural" ingredients, is the crux of the company's business model:

> We're a group of consumers, athletes, active folks, like you. The difference is only that we have decades of experience in the natural products business. Whether it was by luck or some divine intervention, each of us independently reached a point that we knew things could be done better. Probably more luck than anything.
>
> Nice but what does all that mean? … No more of the old school products that you "know" are supposed to be good for you but just taste horrible. No more products that contain junk ingredients. Yes, we're taking food technology and manufacturing advancements to create products that you need, will actually enjoy, and will want more of.…
>
> … At YUP, we believe that people have similar AND very different needs. Whether you're active, have a health condition, dietary restrictions, elite athlete, or weekend warrior, your needs will depend on the type of activity you participate in, your goals, and/or your body type. Bottom line, everyone is going to have a different nutritional need. In fact, you may even have different nutritional needs throughout the day. Our goal is to be macro-agnostic and let you decide on what's good for you. After all, you know your body and needs better than anyone, right? If not, you'll find the information you need from people you trust right? YUP is here to provide you the products that are at the top of their respective class. We will only make products that taste as good as they can possibly taste *and* have the cleanest macro-nutrients/ingredients available.[2]

## JURISDICTION AND VENUE

14. This Court has personal jurisdiction over YUP because YUP conducts business in this District, has systematic and continuous business connections and contacts within this District, and committed and continues to commit torts in this District by marketing and selling products in this District using false and deceptive advertising in this District.

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C § 1338, 15 U.S.C. § 1121(a) and 28 U.S.C. § 1367 (supplemental jurisdiction), as well as pursuant to 28 U.S.C. § 1332 (diversity), as this dispute is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

---

[2] *About YUP Brands*, YUP Brands, https://yupbrands.com/about-yup-brands/ (last accessed Jan. 10, 2016).

16. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because YUP is subject to this Court's personal jurisdiction with respect to this action.

### GENERAL ALLEGATIONS

17. BPI and YUP are direct competitors in the dietary and nutritional product market. BPI's FunnBars and YUP's YUP Bars are both sold through various Internet websites and other sports nutrition specialty stores domestically and internationally, including GNC.

18. YUP sells at least ten (10) different varieties of the YUP Bars (seven (7) B-Up Bars and three (3) B-Jammin Bars), each of which YUP claims not only "tastes better", but is "healthy" and contains the "100% natural" ingredient xylitol.

19. While the YUP Bars may well be tasty, they are neither "healthy" nor "natural." Indeed, contrary to these representations, seven of the ten YUP Bars do not meet the necessary FDA or FDCA requirements to be labeled as "healthy," and xylitol is a synthetic ingredient that is not naturally occurring.

### I.   The YUP Bars Are Not "Healthy."

20. Maintaining a healthy lifestyle has increasingly become a priority for consumers in the United States in recent years. In deciding which foods to purchase as part of a healthy diet, American consumers frequently take nutrition information found on product labels and packaging into consideration. As noted by FDA Commissioner Margaret Hamburg during an October 2009 media briefing: "Studies show that consumers trust and believe the nutrition facts information and that many consumers use it to help them build a healthy diet."[3]

21. As a result, the prevalence of claims about nutritional content on food packaging has

---

[3] Transcript for FDA's Media Briefing on Front-of-Pack Labeling, October 20, 2009, available at http://www.fda.gov/downloads/NewsEvents/Newsroom/MediaTranscripts/UCMl 87809 .pdf.

increased in recent years as manufacturers seek to influence consumers' purchasing decisions. An FDA Food Label and Package Survey recently found that approximately 4.8% of food products sold in the United States had either a health claim or a qualified health claim on the food package, and that more than half (53.2%) of the food products reviewed had nutrient content claims on the packaging.

22.     In order to capitalize on consumers' growing desire for "healthy" foods, YUP prominently displays the tagline "Be Healthy. Be Better. B-UP" on all of its B-Up Bar packaging and labeling in order to represent the products as "healthy":



23.     Similarly, YUP prominently displays the tagline "Be Healthy. Be Better. B-Jammin" on all of its B-Jammin Bar packaging and labeling in order to represent the products as "healthy":



24.     YUP also includes the statement "it's time to be healthy" on the labeling and packaging of each YUP Bar and each box of YUP Bars.

25.     Each YUP Bar also refers the consumer to visit YUP's website, www.yupbrands.com, for more nutritional information about the YUP Bars. The YUP website repeats these representations that the YUP Bars are "healthy." Not only is the "Be Healthy. Be Better. B-UP." tagline displayed

6

prominently throughout the website, but the YUP webpage devoted specifically to the B-Up protein bars states: "Whether you are watching what you eat, needing <u>a healthier snack</u>, or incorporating more protein into your diet, YUP Bars are the perfect tasty bar for you."[4] This webpage further states: "B-Up Bars are the <u>healthy</u> and delicious choice your taste-buds and body deserves."[5]

26. In accordance with 21 C.F.R. § 101.65(d)(2), food products may only use the term "healthy" as an implied nutrient content claim on the label or in the labeling of a food provided that the food, among other things, is "low in saturated fat" as defined in 21 C.F.R. § 101.62(c)(2) (i.e., the food has a saturated fat content of 1 gram or less per Reference Amount Customarily Consumed (RACC) and no more than 15 percent of the calories are from saturated fat). An RACC is the "reference amount [that] shall be used as the basis for determining serving sizes for [a] specific product[]." 21 C.F.R. § 101.12(b).

27. The RACC for the YUP Bars, which are dietary supplements, is set at "[t]he maximum amount recommended, as appropriate, on the label for consumption per eating occasion, or, in the absence of recommendations, 1 unit, e.g., tablet, capsule, packet, teaspoonful, etc." 21 C.F.R. § 101.12(b) (Table 2). Accordingly, each of the B-Up Bars has an RACC and a serving size of "1 Bar (62g)," and each of the B-Jammin Bars has an RACC and a serving size of "1 Bar (53g)."

28. Thus, YUP's use of the term "healthy" as an implied nutrient content claim on the labeling and packaging of the YUP Bars constitutes truthful branding only if, *inter alia*, each B-Up Bar has a saturated fat content of 1 gram or less per 62 grams of the food, and each B-Jammin Bar has a saturated fat content of 1 gram or less per 53 grams of the food.

29. In direct violation of this federal regulation, all but one of the seven B-Up Bars contain an amount of saturated fact that exceeds 1 gram per 62 grams of the food. The B-Up Chocolate Chip

---

[4] *B-UP Bar*, YUP Brands, https://yupbrands.com/b-up-protein-bar/ (last accessed Jan. 10, 2016) (emphasis added).
[5] *Id.* (emphasis added).

7

Cookie Dough Bar contains 2.5 grams of saturated fat per 62 grams of the food. The B-Up Peanut Butter Bar contains 3 grams of saturated fat per 62 grams of the food. The B-Up PB&J Bar contains 3 grams of saturated fat per 62 grams of the food. The B-Up Vanilla Peanut Butter Bar contains 3 grams of saturated fat per 62 grams of the food. The B-Up Sugar Cookie Bar contains 2.5 grams of saturated fat per 62 grams of the food. The B-Up Chocolate Mint Bar contains 2 grams of saturated fat per 62 grams of the food.[6] Because each of the foregoing six YUP Bars contains more than 1 gram of saturated fat per 62 grams of the food, none of them are "low in saturated fat," and, in turn, none of them are "healthy" pursuant to 21 C.F.R. § 101.65(d)(2).

30. Moreover, the B-Jammin Vanilla Cherry Pie bar contains 1.5 grams of saturated fat per 53 grams of the food, and is therefore not "low in saturated fat" and, in turn, not "healthy" pursuant to 21 C.F.R. § 101.65(d)(2).

31. Accordingly, each of these seven YUP Bars is misbranded as "healthy" within the meaning of 21 U.S.C. § 343(r)(1)(A).

32. To put this into perspective, the saturated fat content level of most varieties of the YUP Bars exceeds the saturated fat content levels of candy bars that are not represented as healthy. For example, B-Up Peanut Butter Bars and B-Up PB&J Bars each contain 3 grams of saturated fat. By contrast, a PayDay Peanut Caramel Bar contains 2 grams of saturated fat.

33. Branding products as "healthy" carries an implied health claim not present in comparable products that do not use the term "healthy" or its related terms. YUP used this branding to falsely induce reasonable consumers to purchase its products over those of BPI and other competitors.

34. Consumers have relied on YUP's false and misleading "healthy" representations to

---

[6] The B-Up Cinnamon Roll Bar contains 1 gram of saturated fat per 62 grams of the food and is the only one of the seven B-Up Bars that is not disqualified from being labeled "healthy" by its saturated fat content.

purchase YUP Bars over the products of BPI.

**II.     YUP Falsely Represents that the YUP Bars' Ingredient Xylitol Is "100% Natural"**

35.     American consumers are increasingly seeking "All Natural" ingredients in the foods they purchase. Although this segment of the health food market was once a niche market, natural foods have increasingly becoming part of the mainstream food landscape over the last several years. According to *Natural Foods Merchandiser,* a leading information provider for the natural and organic products industry, the natural food industry enjoyed over $81 billion in total revenue in 2010, and grew over 7% in 2009.[7] The market for all natural foods grew 9% in 2010 to $39 billion, and 2010 sales were 63% higher than sales in 2005.[8] Consumer demand for all natural foods was predicted to grow 103% between 2010 and 2015 with annual sales exceeding $78 billion in 2015.[9]

36.     Consumers desire "natural" food products for a myriad of reasons, including wanting to live a healthier lifestyle, perceived benefits in avoiding disease and other chronic conditions, as well as to increase weight loss and avoid chemical additives in their food. The "natural" branding also appears to appeal to individual consumers' interest in supporting sustainable living and environmentally sensitive food consumption, helping the environment, assisting local farmers, assisting factory workers who would otherwise be exposed to synthetic and hazardous substances, and financially supporting the companies that share these values. As a result, consumers are willing to pay a higher price for food and beverages containing "natural" ingredients.

37.     In order to capture and tap into this growing market and the hunger of consumers for the perceived healthier, chemical free benefits of "natural" foods, YUP has advertised and continues

---

[7]     *See Natural and Organic Products Industry Sales Hit $81 Billion,* Natural Foods Merchandiser, (June 1, 2011), available at: http:// www.pmewswirexom/news-releases/natural-and-orgarnc-products-industry-saleshit-81-billion- 122958763.html.
[8]     http://www.marketwirexom/press-release/natural-and-organic-food-and-bevera 1525854.htm (last visited May 26, 2015).
[9]     *Id.*

9

to advertise its YUP Bars as containing several "natural" ingredients, including xylitol.

38.     YUP's website, to which all YUP Bar packaging and labeling refers consumers for additional nutritional information, contains pages titled "B-Up Ingredients" and "B-Jammin Ingredients." These pages each state: "Yes, we're different than other bars," and go on to make the following statements about the ingredient xylitol, which is found in each of the ten YUP Bars:

> **<u>Xylitol–100% Natural</u> Sugar Substitute**
> Xylitol is a delicious sugar substitute that has been used by diabetics and non-diabetics alike. Unlike other sugar substitutes, Xylitol is <u>not an artificial substance</u>, but is widely distributed <u>throughout nature</u> in small amounts.

(emphasis added).

39.     The "Ingredients" box on the labeling and packaging of each of the YUP Bars also directs consumers to "[g]o to www.yupbrands.com to see results for fiber analysis." The "Fiber Analysis" page on YUP's website describes the ingredient xylitol as "a <u>natural</u> sugar alcohol."[10]

40.     While the FDA has not yet developed a definition for the use of the term "natural," the FDA has stated that it "will maintain its policy regarding the use of 'natural' as meaning that <u>nothing artificial or synthetic</u> (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food." 58 Fed. Reg. 2302, 2407 (emphasis added). Although this definition is not a regulation, it is the "most definitive statement of the agency's view."[11]

41.     Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to

---

[10]     *Fiber Analysis*, YUP Brands, https://yupbrands.com/fiber-analysis/ (last accessed Jan. 10, 2016).
[11]     *See* Letter from Michael M. Landa, Acting Director, Center for Food Safety and Applied Nutrition, to Judge Jerome B. Simandle dated September 16, 2010, filed in *Ries et al., v. Hornell Brewing Co., Inc.*, Case No. 10-1139 (N.D. Cal.), Docket No. 54 (hereinafter "Letter to Judge Simandle").

substances created by naturally occurring biological processes." 7 U.S.C. §6502(21).

42. Accordingly, YUP's use of the terms "100% Natural" and "natural" to describe xylitol represents that this ingredient is not synthetic, i.e., that it is not "formulated or manufactured by a chemical process[.]"

43. Contrary to YUP's representations, and unbeknownst to the average consumer, xylitol is a sweetener derived from the crushed fibers of sugar cane using a multi-step chemical reaction that involves the use of sulfuric acid, calcium, phosphoric acid and active charcoal. It is therefore not "natural," let alone "100% natural."

44. Branding products and ingredients as "natural" carries an implied health claim not present in comparable products that do not use the term "natural" or its related terms. YUP used this branding to falsely induce reasonable consumers to purchase its products over those of BPI and other competitors.

45. Consumers have relied on YUP's false and misleading "natural" and "100% natural" representations to purchase YUP Bars over the products of BPI.

## FIRST CLAIM FOR RELIEF
### (False Advertising In Violation of The Lanham Act, 15 U.S.C. § 1125(a)(1)(B))

46. BPI hereby incorporates by reference each and every allegation contained in paragraphs 1-45 as if set forth fully herein.

47. In marketing and advertising its YUP Bars to consumers, YUP makes numerous false and deceptive statements, including "healthy" and "natural", on the packaging and labeling of its YUP Bars and on its website.

48. These claims are false. Seven of the ten YUP Bar varieties advertised, marketed and sold by YUP are not in fact "healthy" (but instead misbranded as "healthy") because they contain a level of saturated fat that exceeds the applicable FDA and FDCA regulations.

49. Contrary to YUP's stated representations that each of the ten YUP Bars contains the

"100% natural" and "natural" ingredient xylitol, this ingredient is not natural but is instead synthetic, as it is derived from a multi-step chemical process.

50. YUP knew or should have known that the YUP Bars are not "healthy" and that the ingredient xylitol is not "natural" or "100% natural."

51. The foregoing false and deceptive representations are misleading in a material way because they fundamentally misrepresent the nature of the ingredients in the YUP Bars, in order to induce consumers to purchase the YUP Bars.

52. In marketing and selling the YUP Bars with false and deceptive advertising, YUP violated the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

53. Consumers have relied and continue to rely on YUP's false and deceptive advertising in deciding to purchase the YUP Bars over similar protein bars sold by BPI. Accordingly, as a direct and proximate result of YUP's false and deceptive advertising, YUP has siphoned and threatens in the future to siphon customers away from BPI, causing BPI to lose sales and market share.

54. Therefore, pursuant to 15 U.S.C. 1117(a), YUP is liable to BPI for (a) YUP's profits improperly earned as a result of its foregoing violations of the Lanham Act; (b) all resulting damages sustained by BPI; (c) the costs of this action; and (d) based on upon the exceptional circumstances present herein, BPI's reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF
### (Violation of the Florida Deceptive and Unfair Trade Practices Act)

55. BPI hereby incorporates by reference each and every allegation contained in paragraphs 1-45 as if set forth fully herein.

56. This claim arises under Chapter 501, Florida Statutes, known as the Florida Deceptive and Unfair Trade Practices Act, based upon the above alleged wrongdoing.

57. YUP is engaged in "trade or commerce" as defined by Fla. Stat. § 501.203(8).

58. YUP has engaged in unfair methods of competition in trade or commerce by using

false and deceptive advertising to market, advertise and sell its YUP Bars to consumers.

59. Consumers have relied and continue to rely on YUP's false and deceptive advertising in deciding to purchase the YUP Bars over similar protein bars sold by BPI. Accordingly, as a direct and proximate result of YUP's false and deceptive advertising, YUP has siphoned and threatens in the future to siphon customers away from BPI, causing BPI to lose sales and market share.

60. BPI is entitled to and seeks injunctive relief pursuant to Fla. Stat. § 501.211(1) to enjoin YUP from violating this section and from further engaging in prohibited acts.

61. BPI is entitled to and seek all costs and attorneys' fees incurred in relation to the investigation, prosecution and/or enforcement of this action under Fla. Stat. § 501.2105(1).

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, BPI demands trial by jury for all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, BPI respectfully prays for relief as follows:

A. That the Court enter judgment in favor of BPI and against YUP on all claims for relief alleged herein;

B. That the Court enter a preliminary and permanent injunction, pursuant to Fla. Stat. § 501.211(1), prohibiting YUP and its respective officers, agents, servants, employees, and/or all other persons or companies acting in concert or participation with it, from using false or deceptive advertising to advertise, market and sell its YUP Bars;

C. That YUP and its respective officers, agents, servants, employees, and/or all other persons or companies acting in concert or participation with it, be ordered to forever end representing its YUP Bars as "healthy" and containing the "natural" or "100% natural" ingredient xylitol in any advertising, marketing or product labeling or packaging;

13

  D. That YUP be directed to file with this Court, and serve on BPI within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which YUP has complied with the injunction pursuant to Fla. Stat. § 501.211(1);

  E. That YUP be required to account to BPI for any and all profits derived by YUP and all damages sustained by BPI by virtue of the actions of YUP complained of herein;

  F. That YUP be ordered to pay to BPI any and all profits derived by YUP and all damages which BPI has sustained as a consequence of the actions of YUP complained of herein pursuant to 15 U.S.C. § 1117;

  G. That an award of interest, reasonable costs, expenses and attorneys; fees be awarded to BPI pursuant to 15 U.S.C. § 1117 and Fla. Stat. § 501.2105(1);

  H. That the Court award BPI such other further relief as the Court may deem proper and just.

Dated: January 13, 2016

|  |  |
|---|---|
| Cary A. Lubetsky / Fla. Bar No. 961360<br>cal@khllaw.com<br>KRINZMAN, HUSS & LUBETSKY, LLP<br>800 Brickell Avenue, Suite 1501<br>Miami, Florida 33131<br>Telephone: (305) 854-9700<br>Facsimile: (305) 854-0508 | Respectfully submitted,<br><br>*/s/ Frank S. Hedin*_____<br>John C. Carey / Fla. Bar No. 78379<br>jcarey@careyrodriguez.com<br>Frank S. Hedin / Fla.Bar No. 109698<br>fhedin@careyrodriguez.com<br>CAREY RODRIGUEZ<br>MILIAN GONYA, LLP<br>1395 Brickell Avenue, Suite 700<br>Miami, Florida 33131<br>Telephone: (305) 372-7474<br>Facsimile: (305) 372-7475<br><br>*Counsel for BPI* |