## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

BPI SPORTS, LLC, a Florida limited
liability company,

       Plaintiff,

v.                                       CASE NO. 0:16-cv-60081-WJZ

YUP BRANDS, LLC, a Nevada limited
liability company,

       Defendant.
_____/


### DEFENDANT'S MOTION TO DISMISS AND INCORPORATED
### MEMORANDUM OF LAW IN SUPPORT

Defendant, by and through the undersigned counsel, hereby moves this court for

dismissal of claims by Plaintiff as indicated herein and in support states as follows:


**I.**      **INTRODUCTION AND SUMMARY OF ARGUMENT**

On January 13, 2016, Plaintiff filed its Complaint alleging, among other things, that YUP

Brands use of the term "natural" to describe an ingredient in its protein and energy bars – a

sweetener called "xylitol" - constituted false and deceptive acts under federal and state law.

YUP's use of the term "natural" in reference to xylitol did not occur on any of the actual

labels or packaging of YUP's products, but rather, on an isolated portion of its website.

Nevertheless, Plaintiff's assert that YUP's use of the term "natural" on its website was a material

factor in allegedly falsely inducing consumers to purchase YUP's bars over the products of BPI.

The challenged ingredient, xylitol, is a natural substance that is found in small amounts in

many fruits and vegetables.[1] Humans also produce small amounts of xylitol via normal

---

[1] http://www.webmd.com/vitamins-supplements/ingredientmono-996-xylitol.aspx?activeingredientid=996

metabolism. Xylitol is extracted from natural sources, including various berries, oats, and mushrooms, as well as fibrous material such as such as birch trees, corn husks and sugar cane.[2]

Plaintiff assert that YUP's use of the term "natural" in describing the ingredient xylitol is deceptive, because the manufacturing process by which xylitol is extracted from plant sources renders it "synthetic." However, Plaintiff obtained its definition for the term "synthetic" from federal regulations that were established exclusively for governing the marketing of food labeled as "organic," and at no time has YUP advertised that its products are in any way organic. Thus, it is clear that Plaintiff has failed to allege facts necessary to state a claim that is plausible on its face, and therefore its "natural" claims must be dismissed.

**The "Natural" and the "Healthy" Claims Are Subject To FDA's Primary Jurisdiction.**

Plaintiff's federal and state false advertising claims hinge on the claim that xylitol is not natural, but rather "synthetic" as it is chemically extracted from sugar cane. However, on November 12, 2015, FDA—the federal agency tasked by Congress with considering and regulating on these exact issues—opened a pre-rulemaking docket to obtain information and comments regarding the "Use of the Term 'Natural' in the Labeling of Human Food Products."

In doing so, FDA is soliciting comments and proposals from the public and food industry on the same issues raised in the Complaint:

- Should *the manner in which an ingredient is produced or sourced* affect whether a food containing that ingredient may be labeled as "natural?"

- Should manufacturing processes be considered in determining when a food can bear the term "natural?"

- [S]hould *certain production practices* ... be a factor in defining "natural?"

- "[H]ow should "unprocessed" and "processed" be defined[?]"

---

[2] https://en.wikipedia.org/wiki/Xylitol

80 Fed. Reg. 69905, 69908 (Nov. 12, 2015) (hereinafter "Request"), Ex. A. (attached).

Significantly, the FDA addressed its prior and current position regarding the use of the term "natural" stating "*When we established our policy concerning the use of the term "natural," ... it was not intended to address food production methods...nor did it explicitly address food processing or manufacturing methods . . ." Id.* The FDA has received over 3,000 responses already and will be taking comments until May 10. It then will decide whether "to revise [its] policy regarding use of the term "natural" or engage in rulemaking to establish a regulatory definition for 'natural.'" *Id.* Remarkably, Plaintiff is willing to force YUP to undergo the extensive temporal and monetary costs incurred in defending this lawsuit, as well as harm YUP's consumer goodwill with the specter of a lawsuit despite the fact that the FDA has unequivocally stated that processing and manufacturing methods are not considered in its definition of natural.

Even before the FDA's Request, courts recognized that "natural" litigation raises "particularly complicated" issues "not yet addressed by the agency," which Congress has committed to" FDA's sound discretion and "expertise." *Astiana v. Hain Celestial,* 783 F.3d 753, 760 (9th Cir. 2015). Accordingly, stays of actions challenging "natural" labeling in deference to FDA's primary jurisdiction are appropriate. *Id.* Given the FDA's Request, the case for staying Plaintiff's "natural" claims on primary jurisdiction grounds is all the more warranted. *See Swearingen v. Late July Snacks*, 2014 WL 2215878, at *3 (N.D. Cal. 2014) (primary jurisdiction applied to false advertising claims challenging the "evaporated cane juice" ingredient, while FDA "is actively considering an issue central to the litigation").

Although this ground alone warrants dismissal of the Plaintiff's claims, there are additional, independent reasons why Plaintiff cannot state a claim based on YUP's minor use of

the term on its website. Setting aside the significant issue of whether there even was a violation

of federal food labeling regulations, such violations are *not* synonymous with consumer

deception. Plaintiff's "natural" claims fail because it cannot allege that it, or any reasonable

consumers were plausibly deceived by the use of the word "natural." Every reasonable

consumer knows that "protein bars" and/or "energy bars" — processed packaged food products

— do not "springing fully-formed from . . . trees and . . . bushes." *Pelayo v. Nestle USA, Inc.*,

989 F. Supp. 2d 973, 978 (C.D. Cal. 2013) ("natural" allegations dismissed at pleading stage).

For the same reason, consumers are "also aware" that xylitol (not just the product as a whole)

"does not come directly from plants [or] trees . . . . Thus, this definition of 'natural' cannot apply

to the [challenged] ingredient." *Id.* at 978 n.4. For these reasons and the others detailed below,

the Court should dismiss Plaintiff's natural claims, "at the point of minimum expenditure of

time and money by the parties and court." *Bell Atl. v. Twombly*, 550 U.S. 544, 558 (2007).

## II.      BACKGROUND

On Defendant's BUP and BJAMMIN protein bars, which make up the basis for

Plaintiff's suit, neither the bars wrappers, nor their packaging contain any claim as to the product

being all natural, or use the term "natural" in any way. Rather, Plaintiff's claims rest solely on

discrete pages on Defendant's website titled "B-Up Ingredients" and "B-Jammin Ingredients[3]."

These pages each make statements regarding the various ingredients in YUP's protein and

energy bars, including the following statement regarding xylitol, which is found in each of the

YUP Bars:

> "**Xylitol–100% Natural Sugar Substitute**
> Xylitol is a delicious sugar substitute that has been used by diabetics and non-
> diabetics alike. Unlike other sugar substitutes, Xylitol is not an artificial
> substance, but is widely distributed throughout nature in small amounts."

---

[3] https://yupbrands.com/ingredients/

*Compl.*, ¶ 38.

Plaintiff alleges that consumers "relied on YUP's false and misleading "natural" and/or "100% natural" representations to purchase YUP's protein and energy bars over the products of BPI. *Compl.* ¶ 45. However, Plaintiff fails to make any allegation that consumers actually visited YUP's website prior to purchasing any of its products. Plaintiff also fails to allege that consumers were even aware of the FDA's standards for "natural," much less that consumers adopted the standards in the context of their purchasing decisions.

**III.    LEGAL ARGUMENT**

**A.   PLAINTIFF'S "NATURAL" CLAIMS FALL UNDER FDA'S PRIMARY JURISDICTION**

Plaintiff's "natural" claims should be dismissed and/or stayed based on FDA's primary jurisdiction. In that way, FDA will be allowed to fulfill its mandate to resolve the issue in the first instance, "maintaining uniformity in the regulation of an area entrusted to a federal agency." *Ellis v. Tribune Television Co.*, 443 F.3d 71, 82 (2d Cir. 2006) (citation omitted); *see also* 21 C.F.R. § 10.25(b) (as between it and the judiciary, "FDA has primary jurisdiction to make the initial determination on issues within its statutory mandate"). FDA's recent Request (pages 2-3, *supra*) demonstrates that FDA is now actively involved in resolving the very labeling issues raised by Plaintiff's "natural" claims, all of which are matters that fall "squarely" within FDA's "expertise and discretion." *Id.*

**1. The Ninth Circuit's Primary Jurisdiction Analysis Of "Natural" Claims In *Astiana* Is Sound And Applies With Far Greater Force Today**

In *Astiana*, 783 F.3d at 760, the Ninth Circuit recently applied primary jurisdiction to challenges to "natural" labeling statements on cosmetics, products also within FDA's jurisdiction. *See* 21 C.F.R. § 700.3 *et seq.* The court held that "[d]etermining what chemical

5

compounds may be advertised as natural on cosmetic product labels is 'a particularly complicated issue that Congress has committed to the FDA,'" and therefore, "[o]btaining expert advice from that agency would help ensure uniformity in administration of the comprehensive regime established by the FDCA." *Astiana*, 783 F.3d at 761. The court was not troubled for a minute at that time—in April 2015—by the fact that "FDA had shown some reticence to define 'natural'" due to "the complexities of the issue." *Id.* Even though at the time of the *Astiana* decision FDA was on record as recognizing that "procedures for establishing the meaning of the term 'natural'" would require "adequate public participation," but that other pressing "health and safety matters [were] currently fully occupying the resources that FDA has available for proceedings" (*id.* at 759-60), the Ninth Circuit had no problem affirming a stay of a "natural" case under FDA's primary jurisdiction.

Now that FDA has actually opened a formal public comment docket on "natural" labeling standards through its Request (pages 2-3, *supra*), the teachings of *Astiana* are all the more persuasive and applicable. In fact, FDA's action is a direct response, in part, to requests made by "Federal district courts" addressing private "natural" false advertising lawsuits for an administrative determination under 21 CFR 10.25(c) of whether food products containing processed ingredients may be labeled as "Natural," "All Natural," and/or "100% Natural." Ex. A at 1. There is an avalanche of precedent applying the primary jurisdiction doctrine to food labeling issues that FDA is in the process of considering (*e.g.*, evaporated cane juice, "0g Trans Fat" claims), and it points uniformly to deferring to FDA on the "natural" issues raised by Plaintiff so that FDA can complete its work.[4] In fact, the case for applying primary jurisdiction is

---

[4] *See, e.g., Walker v. B&B Foods, Inc.*, 2016 WL 463253 (N.D. Cal. Feb. 8, 2016); *Red v. Gen. Mills, Inc.,* 2015 WL 9484398 (C.D. Cal. Dec. 29, 2015); *Backus v. Gen. Mills, Inc.*, 2015 WL 4932687 (N.D. Cal. Aug. 19, 2015) (all dismissing or staying trans-fat claims); *see also Saubers v. Kashi Co.*, 39 F. Supp. 3d 1108, 1112-13 (S.D. Cal. 2014); *Swearingen v. Healthy Beverage LLC*, 2014 WL 2696719 (N.D. Cal. June 11, 2014); *Gitson v. Clover-*

no stronger than here given that FDA has expressly taken up "natural" labeling in direct response to the recent proliferation of "natural" lawsuits. *Id.*

### 2. There Are Additional, Compelling Reasons Why Plaintiff's "Natural" Claims Should Be Addressed By FDA In The First Instance

Courts generally consider four factors in applying the primary jurisdiction doctrine:

(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.

*Ellis*, 443 F.3d at 82. The FDA's active consideration of "natural" labeling (page 2-3, *supra*) is, by itself, sufficient to satisfy these elements and weighs strongly in favor of the doctrine's application.

### 3. Developing A Uniform Definition For "Natural" Labeling In Food Is Uniquely Within The Purview Of FDA And Is Not Within The Conventional Experience Of Judges

As the Ninth Circuit recognized recently, "[w]ithout doubt, defining what is 'natural' for cosmetics labeling is both an area within the FDA's expertise and a question not yet addressed by the agency." *Astiana*, 783 F.3d at 760. The same is true for defining "natural" on food labels.[5] In contrast, courts have recognized that they are not well-equipped to address the highly technical—and mixed scientific-philosophical—issues implicated by what is or is not a "natural" food, let alone how the production method for a food should be evaluated in the equation. See,

---

*Stornetta Farms, Inc.*, 2014 WL 2638203 (N.D. Cal. June 9, 2014); *Smedt v. The Hain Celestial Group, Inc.*, 2014 WL 2466881 (N.D. Cal. May 30, 2014) (all dismissing or staying evaporated cane juice claims).
[5] *See, e.g., Coyle v. Hornell Brewing Co.*, 2010 WL 2539386, at *4 (D.N.J. June 15, 2010) ("The use of the term 'natural' as it pertains to food and beverage labeling falls within the FDA's discretion. The FDA employs food technicians, chemists, nutritionists, and numerous other specialists in order to address public health and safety issues relating to foods and numerous other specialists in order to address public health and safety issues relating to foods and medicines."); *Cox v. Gruma Corp.*, 2013 WL 3828800, at *2 (N.D. Cal. Jul. 11, 2013) (it is simply wrong to "conclude[] that there is no agency charged with determining whether food labels may properly state that GMO products can be labeled 'all natural.' The FDCA and NLEA unquestionably and squarely give that authority to the FDA.").

*e.g., Allen v. Hyland's Inc.*, 300 F.R.D. 643, 668 (C.D. Cal. 2014) ("natural" has no "fixed

meaning"); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 508 (S.D. Cal. 2013) (no uniform definition of

"all natural" exists among consumers); *Pelayo*, 989 F. Supp. 2d at 979 ("the term 'natural' can

be used in numerous contexts" and "may convey different meanings depending on that context")

(citing FTC decision declining to define "natural," 75 Fed. Reg. 63552, 63586 (Oct. 15, 2010)).

FDA, the federal agency that has been tasked with the responsibility for establishing uniform

labeling regulations for food such as YUP bars, is the entity that is equipped to establish a

national, coherent, and uniform standard for "natural."

### 4. The Standards For Food Labeling Are Uniquely Within The FDA's Authority And Discretion

The reasons detailed in the prior section satisfy this requirement, too. Indeed, the

Request issued by FDA (page 2-3, supra) is a first step towards FDA's rulemaking on "natural"

labeling for food in response to the many citizens petitions that have been filed by interested

parties seeking FDA's guidance. *See* 21 C.F.R. § 10.30(h). Moreover, whether and when FDA

acts to promulgate formal regulations is exactly the type of policy decision that Congress has

entrusted to the FDA, the regulatory body with the proper expertise to consider and make sound

policy decisions about "natural" labeling on YUP products. Plaintiff should not be able to upset

FDA's regulatory process midstream, particularly when FDA opened a docket on its own.

### 5. There Is A Danger Of Inconsistent Rulings If Individual Courts Make "Natural" Labeling Decisions

Allowing individual courts to make judicial determinations as to the appropriate

definition for "natural" on food labels would result in a patch-work of decisions and differing

requirements—on a case-by-case and product-by-product basis, no less—that would make

uniform food labels impossible. It is "easy to see why Congress would not want to allow states to

8

impose disclosure requirements of their own on packaged food products," as "[m]anufacturers might have to print 50 different labels . . . ." *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011) (Posner, J; preemption). Permitting FDA to resolve "natural" labeling issues in the first instance "will ensure national uniformity in labeling" which is "particularly significant" where, as here, "several recently-filed ... lawsuits throughout the country involve the same or similar issues as found in the instant suit. The increasing volume of this litigation creates the potential for inconsistent judicial rulings." *Taradejna v. Gen. Mills, Inc.*, 909 F. Supp. 2d 1128, 1135 (D. Minn. 2012); *Swearingen*, 2014 WL 2215878, at *3 (primary jurisdiction applied to false advertising claims challenging the "evaporated cane juice" ingredient, while FDA "is actively considering an issue central to the litigation"). Here, if the FDA determines that the challenged production method of the ingredient *is* permitted in foods advertised as "natural," then Plaintiff's claims will be expressly preempted. *See* 21 U.S.C. § 343-1(a). If this action is not deferred, discordant rulings would (at the least) force YUP to print different labels on a jurisdiction-by-jurisdiction basis or, even worse, subject it to conflicting standards in the states covered by Plaintiff's claims. Certainly, "[t]he prospect that different labels would be permissible in different jurisdictions would impose a burden … that may be alleviated if the FDA chooses to speak directly to the question." *Coyle*, 2010 WL 2539386 at *4 (staying "100% Natural" litigation on primary jurisdiction grounds).

### 6. FDA's Prior Statements On "Natural" And Court Decisions That Pre-Date FDA's Request Do Not Lead To A Different Result

The FDA's prior policy statements and decisions declining to define "natural" must yield to the FDA's Request (pages 2-3, supra). Moreover, in light of the Request, Plaintiff's reliance on a 1993 informal, non-binding policy for natural labeling announced by FDA as "the most definitive statement of the agency's view" (Compl. ¶ 40) is misplaced. Indeed, in the Request,

FDA made clear that its 1993 prior "policy concerning the use of the term 'natural,' . . . was *not intended* to address … *food processing or manufacturing methods*," *i.e.*, the 1993 policy expressly did ***not*** address the alleged bases for Plaintiff's "natural" claims. *See* Ex. A at 1. Significantly, any court decision that pre-dates the November 12, 2015 Request and that declines to apply the primary jurisdiction doctrine to "natural" claims is not a reliable statement of the law.

### B.   THE COMPLAINT FAILS AS A MATTER OF LAW ON OTHER GROUNDS

A complaint must be dismissed when it does not allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plausibility is "context-specific," requiring the Court to "draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Here, Plaintiff never connect the dots to a consumer deception claim.

#### 1.   Plaintiff's Definition of Synthetic Only Applies to Goods Marketed As Organic

Plaintiff's entire claims rests on its definition of the term "synthetic" which Plaintiff asserts that Congress defined in 7 U.S.C. §6502(21). *Compl*. ¶ 41. However, Plaintiff fails to disclose that its definition only applies to products that wish to market goods to be certified as organic. Last year, the USDA, not the FDA, separately issued draft guidance for distinguishing between "synthetic" and "natural" ingredients for purposes of the National Organic Program. As clearly explained by the first section of the chapter which describes the object of 7 U.S. Code § 6500 et seq., "It is the purpose of this chapter—

> **(1) to establish national standards governing the marketing of certain agricultural products as organically produced products;**
> **(2) to assure consumers that organically produced products meet a consistent standard; and**
> **(3) to facilitate interstate commerce in fresh and processed food that is organically produced."**

7 U.S. Code § 6501 – Purposes.

Further, 7 U.S. Code § 6502 restricts its definitions specifically to the chapter or organic

products stating

> "*As used in this chapter:* (21) Synthetic. The term "synthetic" means a substance
> that is formulated or manufactured by a chemical process or by a process that
> chemically changes a substance extracted from naturally occurring plant, animal,
> or mineral sources, except that such term shall not apply to substances created by
> naturally occurring biological processes."

7 U.S. Code § 6502.

Plaintiff's definition for the term "synthetic" is not by promulgated by the FDA, but

rather regulations that establish national standards governing the marketing of food labeled as

"organic." Moreover, said regulations specifically restricts the definitions contained therein to

goods advertised as organic. Here, YUP has never claimed that its products are organic, and

Plaintiff does not allege that it did. As Plaintiff's consumer deception claims are reliant on

YUP's alleged breach of the FDA's regulations due to its process of extracting xylitol, and the

FDA has specifically stated that methods of production are not considered in its definition of

natural, it is clear that Plaintiff has failed to allege enough facts to state a claim to relief that is

plausible on its face, and therefore its "natural" claims must be dismissed.  As such, Plaintiff's

definition of synthetic has no bearing on YUP's goods.

Although the FDA has formally defined "natural flavors" by regulation,[6] it has not

provided a formal regulatory definition for "natural." Instead, the FDA offered informal

guidance, stating that it views "natural, as meaning that nothing artificial or synthetic has been

included in, or has been added to, a food that would not normally be expected to be in the food."[7]

Although the FDA has enforced this guidance with warning letters objecting to foods containing

---

[6] 21 C.F.R. § 101.22(a)(3)
[7] 58 Fed. Reg. 2,302, 2,407 (Jan. 6, 1993)

"synthetic chemical preservatives," like sodium benzoate and potassium sorbate, it has also indicated that a processed corn derivative, high-fructose corn syrup ("HFCS"), could also be labeled "natural." Further, the FDA had clearly stated that its "policy concerning the use of the term 'natural,' . . . was *not intended* to address … ***food processing or manufacturing methods*,**" *i.e.*, it expressly did *not* address the alleged bases for Plaintiff's "natural" claims. Here, Plaintiff attempts to misdirect the court by citing an unrelated definition of organic food as if it was promulgated by the FDA. Thus, Plaintiff's "natural" claims are nothing more than a patchwork fabrication it threw at the wall, hoping they would stick.

### 2. Plaintiff's "Natural" Claims Are Not Plausible

Neither the FDA (yet) nor FTC has established a definition of "natural" in the context of food labeling and advertising. Consistent with FDA's prior reluctance to establish standards for "natural" labeling, courts roundly recognize that "natural" labeling is inherently subjective and has no "fixed meaning." Allen, 300 F.R.D. at 668. That alone warrants dismissal of Plaintiff's "natural" claims under the reasonable consumer test—if "natural" has no fixed meaning, then it cannot be "material." See Leonard, 2012 WL 764199, at *22. Indeed, FDA itself has previously explained that "[f]rom a food science perspective," no food is literally "natural" because "the food has probably been processed and is no longer the product of the earth." *See* http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868.htm (visited Mar. 25, 2016). It is surprising, then, that Plaintiff asserts that consumer's would deceived into believing that a sweetener - with the utterly unnatural sounding name xylitol - would not involve some manmade process in its creation, despite it being a naturally occurring substance.

In its Request, the FDA asked for public comment on at least sixteen distinct and highly-technical issues involving natural labeling, and has received thousands of submissions from

scientific, industry, and consumer groups offering analysis and proposals for "natural." Despite

this uncertainty and lack of uniformity among food experts, Plaintiff glibly contends that

consumers rely on its inapplicable "organic regulation" derived definition of "natural," to claim

that consumers believed that the ingredients of all of YUP's protein bars were caused solely by

nature; not made by human methods of food production. But, such a literal definition of

"natural" is not plausible for a packaged protein bar with names like "Chocolate Chip Cookie

Dough, Sugar Cookie, Cinnamon Roll, Chocolate Mint, Vanilla Peanut Butter, PB&J" and

energy bars with names such as "Apple Pie Ala Mode, Vanilla Cherry Pie, and PB&J."[8]  As the

FTC put it, "[i]t is unlikely that consumers expect the same thing from a natural apple as they do

from natural ice cream."[9]

   Consider the example of *Pelayo v. Nestle S.A.*, a case in which the consumer challenged

the "natural" labeling of Buitoni pastas because they were "manufactured" and contained

allegedly artificial ingredients. Applying *Twombly*, the court dismissed the claim because the

plaintiff had not offered a plausible definition of "natural" in this context. The court rejected the

proposed definition of "produced or existing in nature" because "this definition clearly does not

apply to the Buitoni Pastas because they are a product manufactured in mass, and the reasonable

consumer is aware that Buitoni Pastas are not 'springing fully-formed from Ravioli trees and

Tortellini bushes.'"[10] It then rejected various definitions of "natural" that the plaintiff mixed and

matched from regulatory guidance, ultimately concluding that "[g]iven the FTC's finding that

the term 'natural' can be used in numerous contexts, it is implausible that a significant portion of

---

[8] https://yupbrands.com/b-up-protein-bar/  &  https://yupbrands.com/b-jammin-energy-bar/
[9] FTC, *Termination of Proposed Trade Regulation; Rule on Food Advertising*, 48 Fed. Reg. 23,270 (May 1983).
[10] *Pelayo*, 989 F. Supp. 2d at 978

the general consuming public or of the targeted consumers' would be deceived or misled by the use of the term 'All Natural' on the Buitoni pastas."[11]

Plaintiff admits that consumers "frequently take nutrition information found on product labels and packaging into consideration. *Compl.* ¶ 20. Clearly, if these consumers visited Defendant's website, then they would know that they were buying a processed protein bar and/or energy bar. Further, Plaintiff must be fully aware that all consumers know that the ingredients in a packaged snack food do not "spring [ ] fully-formed" from "trees" and "bushes." *Pelayo*, 989 F. Supp. 2d at 978 (rejecting definition "of 'natural,' meaning 'produced or existing in nature' and 'not artificial or manufactured,'" as neither "objective" nor "plausible").

Here, YUP's website provides explanatory information about the meaning of natural and its product's ingredients. *Compl.* ¶ 38.YUP specifically qualifies its use of term natural by explaining that xylitol is natural sugar substitute as opposed to human invented sugar substitutes not found in nature, e.g., aspartame, saccharin, or sucralose, that are commonly found in protein and energy bars. A recent federal court decision, *Balser v. Hain Celestial Group, Inc.*, dismissed a "natural" class action because, among other reasons, on its website "Defendant actively defines what its use of natural means, so that no reasonable consumer could be deceived."[12] Other courts have rejected "natural" fraud claims when the allegedly unnatural ingredients are listed on the nutrition facts panel.[13] As one court put it, a "100% Natural" claim could not be "viewed in isolation and must be read in the context of the entire package, including the ingredient panel."[14]

---

[11] *Id.* at *14-16.
[12] No. CV 13-05604, 2013 U.S. Dist. LEXIS 180220, at *3-4 (C.D. Cal. Dec. 18, 2013).
[13] *Pelayo v. Nestle USA, Inc.*, *14-16 (C.D. Cal. Oct. 25, 2013).* ("[T]o the extent there is any ambiguity regarding the definition of 'All Natural' with respect to each of the Buitoni Pastas, it is clarified by the detailed information contained in the ingredient list."); See also, Chin v. General Mills, No. 12-2150, 2013 U.S. Dist. LEXIS 77345, *18 (D. Minn. June 2, 2013)* ("[T]he Court agrees with General Mills and finds that the specific terms determine the scope of the express warranty that was allegedly made to the Plaintiffs."
[14] *Chin*, 2013 U.S. Dist. LEXIS 77345 at 18

For the foregoing reasons, no reasonable consumer would be deceived by YUP's use of the term

"healthy".

## IV. CONCLUSION

For all the foregoing reasons, all of the Plaintiff's claims, including but not limited to

those related to YUP's use of natural on its website in describing the ingredient xylitol, and use

of the term healthy, should be dismissed with prejudice.

Dated: March 28, 2016

Respectfully submitted,

*/s/* Dione Carroll
Dione Carroll
CARROLL LAW OFFICES, P.A.
135 Chesterfield St. S.
Aiken, SC 29801
(803) 514-2557
dione@carroll-law-offices.com

*Counsel for YUP Brands, LLC*

## <u>CERTIFICATE OF SERVICE</u>

       I HEREBY certify that on March 28, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF to:

       John C. Carey
       **Carey Rodriquez Milian Gonya, LLP**
       1395 Brickell Ave.
       Suite 700
       Miami, FL  33131

       Frank S. Hedin
       **Carey Rodriquez Milian Gonya, LLP**
       1395 Brickell Ave.
       Suite 700
       Miami, FL  33131

                    /s/ Dionè C. Carroll
                    Dionè C. Carroll, Esq.